## BAKER and others *v.* POWER and others.

*(District Court, D. Minnesota.* November 29, 1882.)

1. COLLISION—VESSEL HAULED UP ON MARINE WAYS.

Where a vessel hauled out and up on marine ways to be docked, for the purpose of having her hull repaired, by reason of insufficiency of the props and stays, breaks loose from her fastenings and slides down into the water, and comes into collision with another vessel, inflicting such injuries that the latter was wrecked and sunk, the same principles of law govern as in the ordinary cases of collision between vessels navigating the river, and the owners of the colliding vessel are responsible for the injury inflicted.

2. SAME—NEGLIGENCE OF CONTRACTORS NOT TO EXCUSE.

The fact that a contract was entered into between the master and part owner of the colliding vessel, and the persons who had charge of the dock-yard and ways, and who took the vessel to haul her up and perform their contract, will not relieve the owners of all responsibility for loss occasioned by the negligence of such contractors.

3. CONTRIBUTORY NEGLIGENCE—OWNERS RESPONSIBLE FOR ACTS OF MASTER.

Where the vessel wrecked by the collision had laid up after her last trip near the marine ways, and her master in charge had consented that she should be removed from her position above to a point directly in front of the marine ways, for the purpose of having her hauled out and up on them, and actually assisted in the removal, and left a watchman in charge, and the former pilot, and both knew the situation of the vessel on the marine ways, *held,* that her owners are responsible for the acts of the master, and that such acts contributed to the disaster, and that no recovery can be had in damages for the destruction of the vessel.

In Admiralty.

*Williams & Davidson,* for libelants.

*O'Brien & Wilson,* for respondents.

NELSON,. D. J. The plaintiffs, owners of the steamer Col. Mc-Cleod, bring suit in admiralty *in personam,* to recover damages to the amount of $17,000 for a collision by the steamer Butte with their vessel. The gist of this action is the alleged negligence of the defendants. The collision occurred upon the Missouri river, near the city of Bismarck, in the territory of Dakota. The steamer Butte was partly hauled up on the marine ways for repair, being dismantled, and having on board as watchman the mate of the steamer during the previous season of navigation. The owners had entered into a written contract with the persons in charge of the marine ways for hauling the vessel out, the terms of which contract are not material. The steamer McCleod had been put in charge of the same persons who hauled out the Butte, for the purpose of hauling her out, and had been dropped down to the landing in front of the ways, and lay just at the foot of the same, dismantled. . These ways are built and used for the purpose of repairing the hulls of vessels, and are located on the land, the timbers gradually inclining or sloping to the river bank, and run partly into the river or to the edge, so that vessels can be hauled out and up on them, broadside. Marine ways are necessary for the proper repairing of vessels, and must be located near the water's edge, so that vessels afloat can be readily hauled upon them, and these dock-yards are not necessarily a nuisance, although the act of hauling out a vessel broadside upon them requires the exercise of great care and caution.

On the seventeenth of November, 1879, when the steamer Butte was partly hauled up on the ways, as stated, and the steamer McCleod was in front, preparatory to being hauled out, the shores or props sustaining the Butte being insufficient to hold her in position, she slid down into the river and collided with the McCleod, inflicting such injury that the latter was wrecked and sunk. The collision, although not the usual one occurring between vessels while navigating the river, is governed by the same principles of law.

I am of opinion that the owners of the Butte steamer are responsible for the injury inflicted on the McCleod, if no blame can be attached to the latter vessel.

It is insisted that the contractors, and not the owners, are liable. The fact that a contract was made between the master and part owner of the Butte with the persons who had charge of the dock-yard and ways, and who took the vessel to haul her up and perform his

contract, will not relieve the owners of all responsibility for loss occasioned by the negligence of such contractors. The negligence of the contractors who hauled out the Butte is conceded, and at the time of the collision a watchman was on board of the vessel appointed and designated by the master. In fact, the master was present when the vessel was hauled out, and knew her position, and how she was propped and stayed.

These facts fix the liability of the owners, for the persons employed to haul out the vessel are not such independent contractors, although the contract is in writing, that they can shield themselves from the consequence of the contractors' negligence.

This rule was applied by Dr. Lushington to *The Ruby Queen*, where the facts and circumstances did not present a case as strong as the one at bar. The Ruby Queen had been placed in the hands of a contractor for sale, and while under his sole charge drifted and collided with another vessel. She was held liable for the injury inflicted through the negligence of the contractor's servants. Lush. Adm. 266. The rule in cases of towage is to be distinguished from this. In the former, when the tow collides with a vessel through negligence of the tug and inflicts injury, the owners of the tug, and not the tow, are held responsible as contractors. The reason is obvious, for the movements of the tug are not under the control of those in charge of the tow, and it is impossible for them to prevent the negligent act of the tug or take steps to intercept it.

In the case at bar the master and part owner of the steamer Butte, was present when she was hauled out, and knew her position, and the manner in which she was propped and stayed. The plaintiffs, therefore, are entitled to a decree unless the McCleod was also to blame and contributed to her injury.

It appears that the steamer McCleod had laid up after her last trip near the marine ways, and the master in charge had consented that the vessel should be removed from her position above to a point directly in front of them for the purpose of having her hauled out. There is some evidence tending to show that the owners desired a contract with the operators and managers of these docks similar to the one entered into with the master of the Butte, but as the master of the McCleod consented to the change of place it is not material whether such contract was actually made. The master was responsible for the position taken by the vessel, and his consent is sufficient to bind the owners. He was not only present when she was dropped down, but assented, and left Bagley, the watchman, in charge, and

also McClender, the former pilot, and both knew the situation of the steamer Butte. It is quite clear that a proper course was not taken by the McCleod. She ought not to have been placed in the position she occupied until the Butte was laid upon the ways, in place, and securely fastened. The master, or person in charge, for whose act her owners are responsible, was to blame in allowing her to be dropped down at the foot of the ways in front of the Butte. It was a negligent act and contributed to the injury.

A decree will be entered in favor of the defendants for costs.